*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GLORIA KATO KARUNGI,

　　　　　Plaintiff/Counterdefendant-
　　　　　Appellant/Cross-Appellee,

UNPUBLISHED
August 19, 2021

v

No. 351165
Oakland Circuit Court
LC No. 2016-841198-DS

RONALD LEE EJALU,

　　　　　Defendant/Counterplaintiff-
　　　　　Appellee/Cross-Appellant.

Before: GADOLA, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

In this litigation regarding cryopreserved embryos, which returns to this Court after previously being considered and remanded for further proceedings,[1] plaintiff/counterdefendant (plaintiff), Gloria Kato Karungi, appeals as of right the trial court's opinion and order dismissing plaintiff's claim for custody of the embryos. Defendant/Counterplaintiff (Defendant), Ronald Lee Ejalu, cross-appeals as of right that same opinion and order, which also denied his request for sanctions in the form of attorney fees and costs. In his cross-appeal, defendant also challenges the trial court's order reconsidering its prior order requiring plaintiff to pay $50,000 as a security bond for costs. We affirm in part and reverse in part.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This Court provided a description of the relevant procedural and factual history in its previous opinion:

　　　Plaintiff and defendant are the parents of a daughter[, EKE,] who was naturally conceived. Plaintiff and defendant were never married, and despite the

---

[1] *Karungi v Ejalu*, unpublished per curiam opinion of the Court of Appeals, issued September 26, 2017 (Docket No. 337152).

end of their relationship in 2013, in 2015, they entered into contractual agreements with an in vitro fertilization (IVF) clinic for the cryopreservation of embryos generated through their genetic contributions. [EKE] has been diagnosed with sickle cell disease, and plaintiff seeks implantation of an embryo in order to give birth to a healthy child and then use the stem cells from that child's umbilical cord for transplantation to [EKE] to cure her disease.

The present dispute arose when defendant no longer wished to follow through with the IVF. At that time, the parties were in a dispute for support of [EKE], and plaintiff initiated this matter in conjunction with that dispute. Plaintiff did not file a separate or amended complaint, but rather filed a motion as part of her support action contending that the embryos were subject to a custody determination. A consent judgment was entered under the "DS" (support case) designation that addressed parenting time, custody, and support for [EKE], but it did not resolve the embryo dispute. Rather the consent judgment included a paragraph that recognized the existence of a controversy pertaining to the embryos and stated that the "embryo issue is preserved for resolution by this Court in this case." After the judgment was entered, defendant filed a motion for summary disposition with respect to plaintiff's argument for custody of the embryos, which the trial court granted pursuant to MCR 2.116(I)(2). In a written opinion, the trial court pointed out that the parties were arguing a child custody case under a support case designation and, as such, held that it did not have subject-matter jurisdiction. The trial court reasoned, "[T]he Family Support Act-as written-provides no authority for this court to consider the disposition of embryos in the context of a child support case. Accordingly, the court has no legal authority to award 'custody' of the embryos to either party in this case." [*Karungi v Ejalu*, unpublished per curiam opinion of the Court of Appeals, issued September 26, 2017 (Docket No. 337152), pp 1-2.]

The panel then vacated the trial court's ruling that it did not have subject matter jurisdiction, reasoning that the court improperly looked to the case caption designation rather than the relief sought. *Id*. at 2. Afterwards, the panel pointed out that the parties had entered into an agreement with the IVF clinic in which they agreed that the cryopreserved embryos "shall be considered the joint property of both recipient and partner who are deemed to be the legal owners," and also agreed to arbitrate "any and all disputes relating to this agreement . . . ." *Id*. at 2-3. The panel opined that the trial court may have reached a different conclusion on whether it had subject matter jurisdiction had it considered the existence of this contract. *Id*. at 3. The panel ultimately declined, however, to reach a decision on whether subject matter jurisdiction existed, and remanded for the trial court to make that determination in the first instance, explicitly ordering the court to consider the contract and the affect that the contract could have on its jurisdictional decision. *Id*. at 4.

In dissent, Judge JANSEN opined that it was improper for the majority to inject the contract issue into the case, and that there was otherwise no reason to remand the case to the trial court to determine whether it had subject matter jurisdiction. *Karungi*, unpub op at 2 (JANSEN, J., dissenting). The dissent explained that, while it agreed that the trial court erred by basing its subject-matter-jurisdiction ruling on the case designation, the trial court otherwise "lacked legal authority to consider the disposition of the embryos in the context of a custody case." *Id*. (emphasis

omitted). Then-Judge (now Chief Judge) MURRAY filed a concurring opinion largely responding to the dissent, explaining that "the majority opinion, with explicit agreement by the dissent, properly concludes that the trial court's reliance upon the case designation to dismiss the case was in error. This is the only holding of the Court." *Karungi*, unpub op at 1 (MURRAY, J., concurring). According to Judge MURRAY, the majority did not make "any conclusive statements about what the contract provides for or whether it is binding (or waived)," and that "a remand on those issues, as well as on the issue of how to address and resolve issues surrounding the embryos if the matter is not sent to arbitration, is best left for the trial court to decide in the first instance." *Id*. at 2.

After this Court's opinion was issued, defendant applied for leave to appeal with our Supreme Court. *Karungi v Ejalu*, 501 Mich 1051 (2018). Although the application for leave was denied, then-Justice (now-Chief Justice) MCCORMACK issued a concurring statement with the order, stating in pertinent part that "the trial court should not avoid the question argued by the parties: whether frozen embryos are persons subject to a custody determination." *Id*. (MCCORMACK, J., concurring).

During the remand proceedings, the trial court ordered the parties to submit briefs addressing the issues raised in the majority opinion of this Court—primarily whether the trial court had subject-matter jurisdiction. In addressing that issue, plaintiff reiterated her arguments that the frozen embryos were living human organisms and the proceedings were governed by child-custody law. In that same regard, plaintiff moved the trial court to appoint a guardian ad litem (GAL) to represent the interests of the embryos. Defendant, in response, argued that this Court had determined that the case was a contract dispute about joint property, and ruled that this case was not a custody dispute. When plaintiff continued to make arguments related to appointment of a GAL, the life-status of the embryos, and the applicability of child-custody law, defendant moved the trial court to order plaintiff to post a security bond for costs.

The trial court denied the motion to appoint a GAL, but ordered plaintiff to pay a $50,000 security bond for costs. Plaintiff moved the trial court to reconsider that decision, arguing that her claims were legitimate and that she was indigent. Plaintiff supplied the trial court with an affidavit supporting her claim of indigency. The trial court ultimately granted the motion for reconsideration, reasoning that plaintiff's arguments were not frivolous and that she was impoverished. Consequently, plaintiff was no longer ordered to pay the $50,000 security bond for costs.

Shortly after that, the trial court determined that it had subject-matter jurisdiction to consider the dispute. The trial court then ordered the parties to brief the contract issues identified by this Court in its first opinion in this case. Plaintiff, once again, reiterated her arguments related to the life-status of the embryo and child-custody law. Defendant moved the trial court to sanction plaintiff for making the arguments, stating that the law-of-the-case doctrine required the trial court to apply contract law and address the joint property dispute.

As related to the IVF Michigan contracts, plaintiff argued that the language referring to the embryos as joint property was an internal policy of IVF Michigan, and not the agreement of plaintiff and defendant. Plaintiff also argued that the arbitration clause had been waived by the parties, that referring to the embryos as property is a violation of public policy, and that the IVF Michigan contract was an adhesion contract. Lastly, plaintiff alleged that she and defendant have

-3-

a private contract between themselves, in which they agreed that defendant would waive any parental rights to a child produced, and would not be required to pay child support. Plaintiff claimed, in an affidavit, that they had an oral agreement to that effect, as well as a signed and written agreement that defendant refused to turn over to plaintiff. She supplied an unsigned version of the alleged contract to the trial court, which was titled as a "donor agreement" and addressed defendant's and plaintiff's rights should a child be produced via artificial insemination.

Defendant, on the other hand, argued that the IVF Michigan contract's reference to the embryos as joint property was binding. He agreed with plaintiff, however, that the arbitration clause had been waived by the parties' decision to litigate in court. Defendant noted that the law in Michigan regarding disputes over cryopreserved embryos was unsettled. Defendant encouraged the trial court to adopt a rule from foreign jurisdictions and an unpublished decision of this Court to maintain the status quo of the frozen embryos until the parties could agree. As to plaintiff's allegation about the donor agreement, defendant argued that he never signed the agreement and that the written and signed version of the contract did not exist.

The trial court agreed with defendant that it was not permitted to decide the life-status of the embryos or determine whether child-custody law applied because that would be outside the scope of this Court's opinion and remand instructions. The trial court, however, noted the unsettled nature of the law in Michigan and denied defendant's request for sanctions. With respect to the IVF Michigan contracts, the trial court ultimately disagreed with both parties. The trial court held that it would not decide whether the IVF Michigan contracts were adhesive, were violative of public policy, or that the arbitration clause had been waived. The trial court reasoned that to do so, it would be adjudicating IVF Michigan's contractual rights without IVF Michigan being a party to the lawsuit. Thus, the trial court held that the embryos would be held in status quo until plaintiff and defendant reached an agreement, or plaintiff engaged in litigation with both defendant and IVF Michigan. Finally, the trial court addressed the donor agreement, and held that it was not enforceable under Michigan's statute of frauds because it was a contract related to medical care under MCL 566.132(1)(g), and plaintiff had not presented evidence of a written contract that was signed by defendant. Having decided all of the issues to the extent that it believed possible, the trial court closed the case.

This appeal followed.

## II. THE DONOR AGREEMENT

Plaintiff argues that the trial court erred when it declined to enforce the donor agreement or to allow her to demand discovery of the written and signed version from defendant. We disagree.

## A. STANDARD OF REVIEW

Resolving this issue requires this Court to interpret a contract and a statute. The proper interpretation of a contract and the proper interpretation of a statute are questions of law reviewed de novo. *Johnson v USA Underwriters*, 328 Mich App 223, 233; 936 NW2d 834 (2019); *Rowland v Washtenaw Co Road Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007).

## B. LAW AND ANALYSIS

The trial court properly determined that the purported written and oral contracts could not be enforced under the statute of frauds. Further, because the terms of the alleged written contract were not relevant to the dispute, the trial court did not err in refusing to permit discovery related to that contract.

Plaintiff's argument that the oral or written contracts between the parties are controlling requires us to engage in contract interpretation. The law regarding such interpretation was recently restated by this Court in *Barshaw v Allegheny Performance Plastics, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 350279); slip op at 3:

> In interpreting a contract, our obligation is to determine the intent of the contracting parties. If the language of the contract is unambiguous, we construe and enforce the contract as written. Thus, an unambiguous contractual provision is reflective of the parties' intent as a matter of law. Once discerned, the intent of the parties will be enforced unless it is contrary to public policy. [Quotation marks and citation omitted.]

In pertinent part, plaintiff contends that she had an oral agreement with defendant, which was later recorded in written form, regarding their rights related to the creation of the embryos. The purported contract, which was named a "donor agreement," related to "artificial insemination." The document reflected an agreement that "the purpose of the insemination is to produce a child," and that defendant, as the "donor," waived his paternity rights "to a child conceived through artificial insemination of sperm [] donated pursuant to this agreement." The donor agreement also reflected that defendant would not attempt to form a parent-child relationship with a child produced as a result of artificial insemination, and that he would not be financially responsible for any such children. The donor agreement contained a clause expressing that someone would collect semen from defendant and then "would perform the artificial insemination." In that same clause, plaintiff "authorize[d] [the] physician to use fresh or frozen semen from" defendant to perform the artificial insemination.

Importantly, the donor agreement only discussed the donation of semen and the performance of artificial insemination. The document contains no mention of an IVF procedure or creation of cryopreserved embryos. Indeed, the contract never uses the words "embryo," "IVF," or "cryopreservation." Moreover, the donor agreement does not provide any instructions on how a dispute related to disposition of the embryos should be settled. Instead, the donor agreement provides for defendant's and plaintiff's rights, should there be a child born from artificial insemination. Lastly, the document provided by plaintiff to the trial court did not contain the parties' names and was not signed.

Rather than address the contents of that purported agreement, the trial court noted that plaintiff had only provided evidence of either an oral contract or an unsigned written contract. Considering there was no written contract signed by defendant, the trial court determined that Michigan's statute of frauds, MCL 566.132(1)(g), barred enforcement of the alleged oral or unsigned agreements. Plaintiff contends that the trial court was incorrect to do so.

-5-

Analysis of the statute of frauds and its applicability to this case necessarily involves statutory interpretation. "When construing a statute, this Court's primary goal is to give effect to the intent of the Legislature. We begin by construing the language of the statute itself. When the language is unambiguous, we give the words their plain meaning and apply the statute as written." *Rowland*, 477 Mich at 202 (citation omitted).

Generally, Michigan's "statute of frauds, MCL 556.132, requires certain types of agreements to be in writing before they can be enforced." *Crown Technology Park v D&N Bank, FSB*, 242 Mich App 538, 548; 619 NW2d 66 (2000). As related to this case, "[a]n agreement, promise, contract, or warranty of cure relating to medical care or treatment," under MCL 566.132(1)(g), "is void unless . . . [it] is in writing and signed with an authorized signature by the party to be charged . . . ." This Court has held "that the statute requires a writing for any agreement, promise or contract relating to medical care or treatment as well as any warranty of cure." *Powers v Peoples Community Hosp Auth*, 183 Mich App 550, 554; 455 NW2d 371 (1990). Thus, the trial court did not err in applying MCL 566.132(1)(g) if the donor agreement or the oral contract underlying it were "related to medical care or treatment . . . ."

When analyzing that question, the trial court focused on the fact that plaintiff and defendant were primarily concerned about finding a cure or treatment for EKE's sickle-cell anemia. According to the parties, they were aware that having a healthy child who matched EKE could lead to a cure. While the parties do not dispute that finding a cure was at least part of the reason they considered having additional children, plaintiff contends that there also were other reasons for the agreement. Specifically, plaintiff cites her affidavit filed with the trial court, in which she stated that another reason for agreeing to the artificial insemination in the oral and unsigned contracts was to create a family for EKE. Defendant disputes that reason, but regardless of its veracity, the trial court still reached the correct conclusion.

Notably, MCL 556.132(1)(g) only requires the contract in question to be "related to medical care or treatment." Therefore, even if there were other reasons for agreeing to artificial insemination besides treatment of EKE's sickle-cell anemia, plaintiff cannot seriously dispute that artificial insemination, on its own, is medical care or treatment, and the text of the contract reflects a similar understanding by the parties. Consequently, regardless of the reason for the contract, it is clear that it was "related" to medical care or treatment. MCL 556.132(1)(g). As such, the trial court properly determined that the oral or unsigned versions of the alleged contract could not be enforced pursuant to Michigan's statute of frauds.

In an attempt to escape that conclusion, plaintiff contends that a signed and written version of the contract exists, but was in defendant's sole possession. Further, plaintiff asserts that the trial court refused to allow her to demand production of the document via discovery. Plaintiff's argument is unpersuasive because even if the written and signed version of the donor agreement existed, it was not relevant, and thus, not discoverable. In general terms, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claims or defenses . . . ." MCR 2.302(B)(1). "Relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Rock v Crocker*, 499 Mich 247, 256; 884 NW2d 227 (2016), quoting MRE 401.

As summarized above, the donor agreement pertained solely to artificial insemination and the parties' rights regarding any children conceived as a result of artificial insemination. The dispute in this case, however, is how to address a disagreement between the parties regarding the disposition of cryopreserved embryos created by IVF. As defendant has pointed out, artificial insemination and IVF are not the same thing. One does not need to look beyond the language of the donor agreement and the IVF Michigan contracts to discern the difference. While in both instances there is a fertilized egg produced, it is clear from the documents that the fertilization during artificial insemination occurs in the human body, and, during IVF, the fertilization occurs in a laboratory.[2]

With that understanding in mind, it is clear why introduction of the alleged written and signed version of the donor agreement would not be relevant to the present dispute. The trial court was considering whether any contract dictated what should happen with cryopreserved embryos when the parties could not agree. Plaintiff's contention that the written and signed donor agreement would help decide that dispute is simply incorrect. A document related to the parties' rights and responsibilities related to artificial insemination is not implicated in a dispute regarding cryopreserved embryos produced by IVF. Thus, plaintiff's argument that application of the statute of frauds would not have been needed if she had been permitted to discover the written and signed version of the donor agreement being held by defendant lacks merit. Thus, the donor agreement was irrelevant and, for that reason, outside the scope of discovery. MCR 2.302(B)(1); *Rock*, 499 Mich at 256, citing MRE 401.

### III. THE IVF MICHIGAN CONTRACTS

Plaintiff argues that the trial court improperly held that deciding the dispute related to the embryos required an adjudication of the rights of a nonparty, IVF Michigan. We disagree.

### A. STANDARD OF REVIEW

When considering whether a dismissal was appropriate because of the parties' failure to join an essential party, this Court held that because "the trial court rendered its decision as a matter of law," it was "subject to review de novo." *Mather Investors, LLC v Larson*, 271 Mich App 254, 256; 720 NW2d 575 (2006).[3] To the extent this appeal "involves questions regarding the proper interpretation of a contract, this Court's review is de novo." *Johnson*, 328 Mich App at 233.

---

[2] This understanding is supported by medical literature on the issues. "During IVF, mature eggs are collected (retrieved) from ovaries and fertilized by sperm in a lab." Mayo Clinic, *In Vitro Fertilization (IVF)*, <https://www.mayoclinic.org/tests-procedures/in-vitro-fertilization/about/pac-20384716> (accessed May 28, 2021). Meanwhile, "artificial insemination" is defined as the "introduction of semen into the vagina other than by coitus." *Stedman's Medical Dictionary* (2014).

[3] The parties' arguments regarding whether the child-custody standard of review or the division of property during a divorce standard of review should apply are both incorrect. In the simplest terms, this portion of the trial court's decision pertains to whether the trial court properly dismissed the

Plaintiff argues that the trial court erroneously concluded that IVF Michigan's rights would have been affected by a decision regarding the dispute over the cryopreserved embryos. "Under MCR 2.205(A), persons must be joined if 'their presence in the action is essential to permit the court to render complete relief . . . .' " *Mason Co v Dep't of Community Health*, 293 Mich App 462, 489; 820 NW2d 192 (2011). This is part of the "venerable rule that joinder is required of all parties 'concerned in the controversy . . . to have their respective interests charged or protected, and to end the controversy once for all.' " *Mather Investors*, 271 Mich App at 257, quoting *Brown v Kalamazoo Circuit Judge*, 75 Mich 274, 280; 42 NW 827 (1889). "The purpose of the rule is to prevent the splitting of causes of action and to ensure that all parties having a real interest in the litigation are present." *Mason Co*, 271 Mich App at 489.

"A party is 'indispensable' to a case if that party has an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience." *Mather Investors*, 271 Mich App at 257-258 (quotation marks and citation omitted). Our Supreme Court has been clear that trial courts are "in no position to adjudicate the claims of nonparties or to circumvent [their] possible defenses . . . ." *Yedinak v Yedinak*, 383 Mich App 409, 419; 175 NW2d 706 (1970); see also *Capitol S&L Co v Std S&L Ass'n of Detroit, Mich*, 264 Mich 550, 553; 250 NW 309 (1933) ("An adjudication affecting his rights . . . cannot be made at this time, as he is not a party to the suit.").

In the present case, plaintiff and defendant signed two identical contracts with IVF Michigan. In those contracts, they agreed with IVF Michigan that the cryopreserved embryos would be treated as joint property with plaintiff and defendant as the legal owners. They also agreed that any dispute regarding the contracts would be handled via arbitration. When this Court remanded to the trial court and asked the court to consider those contracts and their effects on the dispute, plaintiff did not seek to join IVF Michigan to the lawsuit. Instead, plaintiff argued either that the contract was not enforceable because it did not reflect plaintiff's and defendant's agreement regarding disposition of the embryos, that the contract was an adhesion contract, that the arbitration clause had been waived, or that the clause related to treating the embryos as property was void as a matter of public policy. The public policy that existed, according to plaintiff, was that cryopreserved embryos were to be treated as human organisms, not property. The trial court considered those various arguments and reasoned that, if it were to decide them, it would be required to adjudicate the contractual rights of IVF Michigan without them being a party to the case. Therefore, it declined to consider the issues further and opined that if plaintiff wanted to have those arguments addressed, she needed to initiate litigation that involved both IVF Michigan and defendant.

On appeal, plaintiff contends that the trial court incorrectly determined that a decision regarding disposition of the embryos would adjudicate IVF Michigan's contract rights. Plaintiff

---

case on the basis of the parties' failure to join a necessary party, which is an issue of law that this Court reviews de novo. *Mather Investors*, 271 Mich App at 256.

is incorrect. Throughout the proceedings, plaintiff clearly and regularly argued that the IVF Michigan contracts were not enforceable for a variety of reasons. The one reason that the trial court actually addressed was whether plaintiff and defendant had an agreement, outside the terms of the IVF Michigan contracts, regarding how they would settle disputes related to the frozen embryos. As discussed above, the trial court held that plaintiff had only presented evidence of contracts or agreements that could not be enforced under the statute of frauds or were not relevant. After making that determination, the trial court noted that plaintiff's remaining arguments were that the IVF Michigan contract was an adhesion contract, the arbitration clause had been waived, and that the contract violated public policy by referring to cryopreserved embryos as property. The trial court held that deciding any of those three issues would improperly adjudicate IVF Michigan's contract rights without having that company participate in the litigation.

Recall that "[a] party is 'indispensable' to a case if that party has an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience." *Mather Investors*, 271 Mich App at 257-258 (quotation marks and citation omitted). In the present case, in light of the remaining issues raised by plaintiff, any relief by the trial court would have required a declaration that IVF Michigan had written and required plaintiff to sign an adhesion contract or that it had entered into a contract that violated Michigan's public policy. Plaintiff's contention that those rulings would not require the adjudication of IVF Michigan's rights is simply not supported—IVF Michigan was a party to the contract and has rights clearly identified in the contract. To suggest that IVF Michigan had no interest in a court of law's determination that its contract was adhesive and violative of public policy defies common sense.

Considering IVF Michigan's interest in the case, and that to provide plaintiff with the relief she requests in the present dispute would require the trial court to determine IVF Michigan's contractual rights, IVF Michigan was an essential party. *Mather Investors*, 271 Mich App at 257-258. Absent IVF Michigan's involvement in the case, the trial court was correct that it was "in no position to adjudicate the claims of nonparties or to circumvent [their] possible defenses . . . ." *Yedinak*, 383 Mich App at 419. Thus, the trial court's decision that it could not decide the dispute was correct. *Mather Investors*, 271 Mich App at 257-258.

## IV. LIFE-STATUS OF THE EMBRYOS AND CHILD-CUSTODY LAW

Plaintiff contends that the trial court erroneously determined that it was precluded from deciding the life-status of the embryos or whether child-custody law applies based on the law-of-the-case doctrine. We agree that the law-of-the-case doctrine did not prelude the trial court from addressing those issues.

### A. STANDARD OF REVIEW

"The issue of whether the law-of-the-case doctrine applies is a question of law that this Court reviews de novo." *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 406; 952 NW2d 586 (2020).

## B. LAW AND ANALYSIS

The trial court improperly determined that it was restricted to only applying contract law under the law-of-the-case doctrine.

"[U]nder the doctrine of the law of the case, if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal question will not be differently determined in a subsequent appeal in the same case where the facts remain materially the same." *Ingham Co v Mich Co Rd Comm Self-Ins Pool (On Remand)*, 329 Mich App 295, 303; 942 NW2d 85 (2019) (citation omitted). Not only does that apply to subsequent appeals, but "the ruling of a higher court on an issue in a case will bind the lower court on remand . . . ." *Pioneer State Mut Ins Co*, 331 Mich App at 406. "The doctrine is applicable only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Lenawee Co v Wagley*, 301 Mich App 134, 149-150; 836 NW2d 193 (2013) (quotation marks and citation omitted).

In reasoning that it was restricted to deciding this case on the basis of contract law, the trial court appears to have relied on statements from the majority opinion in the last appeal referring to this case as a "contract dispute." For instance, in the remand instruction, the majority stated, "Remanded to the trial court to determine whether it has subject-matter jurisdiction over the contract dispute between the parties and, if so, to allow the parties to present evidence on the issue." *Karungi*, unpub op at 5. The trial court interpreted this statement and others from the opinion as this Court deciding that only contract law could be considered on remand, making that the law of the case. See *Lenawee Co*, 301 Mich App at 149-150.

While the word choice of the prior panel's majority opinion understandably caused confusion on remand, we disagree with the trial court's interpretation of the opinion. The previous opinion expressly declined to decide whether the trial court had subject matter jurisdiction. *Karungi*, unpub op at 4 ("Accordingly, we decline to decide whether the trial court had subject-matter jurisdiction . . . ."). If the trial court did not have subject matter jurisdiction, any action it took in the case besides dismissal would have been void, and the case would have effectively ended. See *Todd v Dep't of Corrections*, 232 Mich App 623, 628; 591 NW2d 375 (1998) ("When a court is without jurisdiction of the subject matter, any action with respect to such a cause, other than to dismiss it, is absolutely void."). Interpreting the majority opinion as the trial court did— deciding that, if the trial court had subject matter jurisdiction, then only contract law can apply— would render the opinion an improper advisory opinion, see *League of Women Voters of Michigan v Secretary of State*, 506 Mich 561, 581; 957 NW2d 731 (2020), that could "have no binding effect on any future litigation between interested parties," *Anway v Grand Rapids Railway Co*, 211 Mich 592, 635; 179 NW 350 (1920). Thus, despite the admittedly confusing language of the earlier majority opinion, the only reasonable interpretation of that opinion is that it held that the trial court erred by concluding that it did not have subject matter jurisdiction due to the case designation and remanded for the trial court to make a subject matter determination in the first instance. In so doing, the majority directed the trial court to consider the potential contractual issue that could prove dispositive. That directive did not limit the trial court to only addressing the contract issue.

Accordingly, while the trial court could decide that this case can only be resolved on contractual grounds, see *Karungi*, 501 Mich at 1051 (MCCORMACK, J., concurring) (noting without expressing an opinion that "it is possible those contracts alone could prove outcome-

-10-

determinative"), such a decision was not necessitated by the prior majority's opinion. The trial court erred by holding that this Court's previous opinion restricted the court to only considering contract law. We therefore remand for the trial court to decide how this case should be resolved.

## V.  DEFENDANT'S REQUEST FOR SANCTIONS

Defendant, in his cross-appeal, asserts that the trial court abused its discretion by denying his motion for sanctions. We disagree.

### A.  STANDARD OF REVIEW

"This Court reviews for an abuse of discretion a request for sanctions . . . ." *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 706; 950 NW2d 502 (2019). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 71; 903 NW2d 197 (2017) (quotation marks and citation omitted). "This Court reviews de novo whether the trial court properly interpreted and applied the relevant . . . court rules." *Franks v Franks*, 330 Mich App 69, 86; 944 NW2d 388 (2019).

### B.  LAW AND ANALYSIS

Defendant contends that the trial court should have granted sanctions because plaintiff presented evidence and arguments related to the life-status of the embryos and application of child-custody law. Defendant insists that sanctions were warranted because, as a result of the law-of-the-case doctrine, plaintiff's arguments could not have possibly been meritorious. Based on our conclusion that the law-of-the-case doctrine did not preclude plaintiff from raising—and the trial court from addressing—such issues, we affirm the trial court's conclusion that sanctions were not warranted in this case.

## VI.  RECONSIDERATION OF SECURITY BOND

Defendant argues that the trial court abused its discretion by reconsidering its prior order requiring plaintiff to pay a $50,000 security bond for costs. We disagree.

### A.  STANDARD OF REVIEW

"This Court reviews a trial court's decision to grant or deny a motion for reconsideration for an abuse of discretion." *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Id*. "This Court reviews de novo whether the trial court properly interpreted and applied the relevant . . . court rules." *Franks*, 330 Mich App at 86.

### B.  LAW AND ANALYSIS

Defendant argues that the trial court abused its discretion by failing to consider that plaintiff's arguments were obviously meritless, and by choosing to consider plaintiff's affidavit supporting her indigency filed for the first time with the motion for reconsideration. "Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which

merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted." MCR 2.119(F)(3). "The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error." *Id*. "The trial court has considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties." *Auto-Owners Ins Co v Compass Healthcare PLC*, 326 Mich App 595, 608; 928 NW2d 726 (2018) (quotation marks and citation omitted). "[A] court has full discretion to decline to consider evidence presented with a motion for reconsideration that could have been presented the first time the issue was argued." *Yachcik v Yachcik*, 319 Mich App 24, 42; 900 NW2d 113 (2017) (quotation marks and citation omitted).

Defendant's argument is related to the trial court's decision to reconsider its prior order requiring plaintiff to post a $50,000 security bond under MCR 2.109(A). Under that court rule, a trial court is permitted to "order the opposing party to file with the court clerk a bond with surety as required by the court in an amount sufficient to cover all costs and other recoverable expenses that may be awarded by the trial court," in situations where such an action "appears reasonable and proper . . . ." *Id*. "The court shall determine the amount in its discretion." *Id*. There are, however, exceptions to that rule. MCR 2.109(B). As pertinent to the present dispute, "[t]he court may allow a party to proceed without furnishing security for costs if the party's pleading states a legitimate claim and the party shows by affidavit that he or she is financially unable to furnish a security bond." MCR 2.109(B)(1).

This Court has stated that "[s]ecurity should not be required unless there is a substantial reason for doing so." *In re Surety Bond for Costs*, 226 Mich App 321, 331; 573 NW2d 300 (1997). "A 'substantial reason' for requiring security may exist where there is a 'tenuous legal theory of liability,' or where there is good reason to believe that a party's allegations are 'groundless and unwarranted.' " *Id*. at 331-332, quoting *Hall v Harmony Hills Recreation, Inc*, 186 Mich App 265, 270; 463 NW2d 254 (1990). When a case involves an indigent plaintiff, this Court has held that "the fulcrum of the rule's balance is the legitimacy of the indigent plaintiff's theory of liability." *In re Surety Bonds for Costs*, 226 Mich App at 333 (citation omitted). "In determining the legitimacy of a claim, a trial court is not strictly limited to considering the plaintiff's legal theory, but may also consider the likelihood of success on that theory." *Id*.

On June 15, 2018, the trial court entered its opinion and order granting defendant's request for bond. In reaching that decision, the trial court considered plaintiff's significant briefing and presentation of an affidavit by an expert witness. The trial court also noted that whichever decision was ultimately reached on the issues, the case would likely be appealed. The trial court concluded by stating that, "[g]iven the likelihood of continued litigation and the additional resources presented in support of mother's litigation, the court grants father's motion and directs mother to post $50,000 bond within 14 days of this order's date." The "additional resources" referenced in the opinion, presumably, were the pro bono legal services of prolife organizations, which was one of defendant's arguments.

Plaintiff then moved for reconsideration of that order, arguing that the trial court failed to address her indigency. Relying on MCR 2.109(B)(1), plaintiff asserted that her arguments were legitimate and that she could not afford to post the $50,000 bond. Plaintiff attached an affidavit to that motion explaining that she was receiving public assistance and was impoverished. The trial

court ordered defendant to respond to the motion, and he reiterated his arguments that plaintiff's claims lacked merit because of the law-of-the-case doctrine. Defendant also contended that the trial court should not consider plaintiff's affidavit because she had not attached it to her original argument in response to defendant's request for the bond. Even considering that affidavit, defendant insisted that the trial court should not consider plaintiff impoverished because of the pro bono support she was receiving. The trial court, however, decided to exercise its discretion to consider the affidavit, found that plaintiff was indigent, and held that her claims were legitimate. The trial court relied on the reasoning provided above—that the state of the law related to cryopreserved embryos in Michigan was unsettled. Thus, relying on MCR 2.109(B)(1), the trial court granted plaintiff's motion for reconsideration and withdrew the requirement for plaintiff to post a bond.

In this appeal, defendant first asserts that the trial court abused its discretion by granting reconsideration because plaintiff's claims were not legitimate. Once again, defendant relies on his argument related to law-of-the-case doctrine and plaintiff's decision to keep making those arguments. As discussed above, we disagree with defendant that the law-of-the-case doctrine barred the trial court from revisiting plaintiff's claims related to the life-status of the embryo and application of child-custody law. Therefore, the trial court did not abuse its discretion in deciding that plaintiff's arguments are not " 'groundless and unwarranted.' " *In re Surety Bond for Costs*, 226 Mich App at 331-332, quoting *Hall*, 186 Mich App at 270.

Second, defendant argues that the trial court abused its discretion by considering plaintiff's affidavit related to her indigency that she first attached to her motion for reconsideration. Defendant relies on the caselaw cited above, which provides that "a court has full discretion to decline to consider evidence presented with a motion for reconsideration that could have been presented the first time the issue was argued." *Yachcik*, 319 Mich App at 42 (quotation marks and citation omitted). Defendant attempts to construe that caselaw as a holding that considering documentary evidence provided for the first time in a motion for reconsideration *must be* an abuse of discretion. *Id*. Semantics aside, this Court's holding in *Yachcik* does not provide support for defendant's contention that a trial court is essentially barred from considering evidence provided with a motion for reconsideration that could have been presented earlier. Instead, the caselaw provides that the trial court has "full discretion" to consider—or not consider—such evidence. *Id*. In the instant case, the trial court chose to exercise that discretion to consider plaintiff's affidavit supporting her indigency. In other words, the trial court decided to exercise "considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties." *Auto-Owners Ins Co*, 326 Mich App at 608 (quotation marks and citation omitted). Consequently, the trial court's order granting reconsideration and removing the bond, in light of plaintiff's legitimate claims and indigency, was not an abuse of discretion. MCR 2.109(B)(1); MCR 2.119(F)(3).

## VII. CONCLUSION

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien

-13-