Per Curiam.
*600 Defendants[1] appeal as of right the trial court's opinion and order denying their motion for summary disposition, sanctions, and attorney fees and, instead, granting summary disposition and awarding attorney fees and costs to plaintiffs.[2] We affirm the trial court's order granting summary disposition in favor of plaintiffs and reverse the trial court's award of reasonable attorney fees and costs to Auto-Owners and Home-Owners under MCL 445.257(2).
*728 I. RELEVANT FACTUAL BACKGROUND
On July 3, 2014, Caleb Casanova was injured in an automotive accident. Casanova sustained a concussion, a comminuted fracture of his C2 vertebra, and various other minor injuries. Casanova was admitted to the intensive care unit of Sparrow Hospital, and defendants[3] provided treatment to him on July 4, 2014. Compass Health submitted a bill to Home-Owners, Casanova's no-fault insurer, for $1,859. On August 5, 2014, Home-Owners submitted payment to Compass Health in the amount of $1,076.14, the amount Home-Owners determined was reasonable and necessary for the services Compass Health provided to Casanova. On August 13, 2014, Compass Health sent an invoice directly to Casanova for the remaining $782.86. A second statement was sent to Casanova on September 5, 2014.
On September 18, 2014, Home-Owners sent a second letter to Compass Health, indicating that if Compass Health wished to dispute the reasonableness of its *601 $1,076.14 payment, it was to deal with Home-Owners directly, not with Casanova. Regardless, Compass Health sent Casanova invoices on October 20, 2014, and on February 11, 2016. On March 1, 2016, Home-Owners sent a second letter to Compass Health, advising that reasonable payment had been made to Compass Health on behalf of Casanova in accordance with MCL 500.3107 and MCL 500.3157. Home-Owners informed Compass Health that it could pursue legal action if it wished to dispute the reasonableness of the payment but that it was to cease having direct contact with Casanova. Nevertheless, Compass Health sent two more invoices to Casanova on April 11, 2016, and April 20, 2016.
On May 5, 2016, Home-Owners sent a third letter to Compass Health: this time, a notice to cease and desist. According to Home-Owners and Auto-Owners, the letter advised Compass Health that Home-Owners was "the only proper party to any dispute as to the reasonableness of the payment" and that all collections efforts directed at Casanova should be ceased. Yet on June 10, 2016, July 11, 2016, and August 10, 2016, Compass Health again sent invoices directly to Casanova.
On November 15, 2016, plaintiffs filed a five-count complaint against defendants, seeking a declaratory judgment under the no-fault act, MCL 500.3101 et seq ., seeking a "declaration from the [c]ourt as to whether Compass [Health] may attempt to obtain payment" of its "balance bill"[4] directly from Casanova, regardless of *602 the reasonable payment made by Home-Owners. Plaintiffs also sought injunctive relief, requesting that Compass Health be prevented from contacting Casanova regarding collections pending the outcome of the instant action. Casanova also sought relief under Michigan's regulation of collection practices act (the MRCPA), MCL 445.251 et seq ., seeking damages. Finally, all plaintiffs sought attorney fees pursuant to MCL 500.3148(2).
In lieu of an answer, defendants moved for summary disposition pursuant to MCR 2.116(C)(4) and (8) and for sanctions pursuant to MCR 2.114(F). Defendants argued that plaintiffs' claim for declaratory relief was moot because the underlying *729 debt giving rise to plaintiffs' claim was unenforceable. Specifically, defendants admitted that the "debt is unenforceable ... pursuant to the one-year-back rule that governs the recovery of benefits under" MCL 500.3145. Similarly, defendants argued that because the underlying debt was unenforceable, plaintiffs' claim for injunctive relief was not yet ripe for review. Finally, defendants argued that plaintiffs were not entitled to attorney fees under MCL 500.3148(2) because plaintiffs could not recover fees related to a lawsuit they initiated. Defendants also sought sanctions, claiming that plaintiffs' lawsuit was "frivolous."
In response, Casanova argued that despite defendants' admission that the balance owed was unenforceable as a matter of law, defendants continued to contact him in an effort to collect the balance, and for that reason, plaintiffs are entitled to the relief requested in their complaint. With his response to defendants' motion for summary disposition, Casanova included a countermotion for summary disposition pursuant to MCR 2.116(C)(10), which Home-Owners *603 concurred with. Plaintiffs agreed that all the medical expenses incurred by Casanova were covered under his no-fault insurance policy with Home-Owners and that pursuant to MCL 500.3157, Home-Owners had paid defendants a reasonable amount for services actually rendered. Casanova asserted that he was therefore not responsible for the difference and that in light of defendants' own admission that the balance owed was unenforceable, summary disposition in favor of plaintiffs was appropriate.
Defendants replied, now arguing that plaintiffs had misunderstood their argument: although the balance bill was unenforceable under the no-fault act, Casanova still incurred an implied contractual obligation to pay independent of the act. Defendants articulated that they had not raised this argument earlier because plaintiffs had never claimed the balance was unenforceable under contract law and defendants were not required to negate every theory not raised by plaintiffs.
Following a hearing on defendants' motion for summary disposition and Casanova's countermotion for summary disposition, the trial court entered a written opinion and order granting summary disposition in favor of and awarding attorney fees and costs to plaintiffs and denying defendants summary disposition, sanctions, and attorney fees and costs. The trial court ultimately concluded that Michigan law is well settled, that there is no factual dispute that Home-Owners is Casanova's no-fault insurer, and that Home-Owners is, accordingly, "liable to pay benefits for Casanova's care, treatment, and rehabilitation arising out of this injury." Further, the court ruled that under MCL 500.3107(1)(a), Home-Owners must pay all "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services *604 and accommodations ...." The court noted that defendants, as medical providers, also have duties under the no-fault act, including the duty to charge no more than a reasonable amount for the products, services, and accommodations rendered. As the court explained, this means that a medical provider " 'shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.' " (Quoting MCL 500.3157.)
The trial court went on to conclude that "it is a well-settled matter of law that insurance providers like Home-Owners ... have an obligation to audit charges and make only reasonable payments as part of a cost-policing function meant to provide health care providers an incentive to keep *730 costs to a minimum." Further, the court stated that simply because plaintiffs did not frame their complaint as requesting a declaration about Casanova's contractual liability did not mean that plaintiffs' complaint "failed to state a claim or allege sufficient facts." Indeed, plaintiffs' "argument, through the Complaint and pleadings, is clearly that they are seeking a declaration on the question of whether the practice of reasonable partial payments made by insurers to providers allowed by the No-Fault Act should result in liability to the insured." To that end, the trial court concluded that given relevant caselaw, statutory interpretation, and public policy,
a [medical] provider cannot lawfully charge more than a reasonable amount for products, services, and accommodations, [and it] is clear, that once an insurer has made its required audit, determination, and payment of benefits for the reasonable and necessary charges billed by providers, a provider cannot then pursue and collect the remainder of the bill from a patient-insured. Where a provider disputes *605 an insurer's determination and subsequent partial payments, that dispute belongs solely between the provider and insurer, and is subject to the one-year-back provision of MCL 500.3145.
Finally, the trial court concluded that by sending defendant at least 10 collections letters or billing statements and by ignoring the cease and desist letters sent by Home-Owners, defendants had willfully violated the MRCPA, "by making misleading statements to Casanova that he owed the balance bill, where [d]efendants were on notice that Casanova's liability was in dispute and where Casanova never owed the bill charged in accordance with the No-Fault Act, pursuant to MCL 445.252(e)." The court ruled that Casanova was therefore "entitled to $150 in damages per violation, that being each of the ten billing statements sent to Casanova in an attempt to collect a debt he did not owe." The trial court reiterated that because defendants violated MCL 445.252(e), all plaintiffs were entitled to reasonable attorney fees and costs under MCL 445.257(2).
Two days after the trial court entered its opinion and order, our Supreme Court issued its decision in Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co. , 500 Mich. 191, 895 N.W.2d 490 (2017). On the basis of that opinion, defendants moved for reconsideration of the trial court's opinion and order under MCR 2.119(F). Defendants argued that after Covenant , medical providers have "no statutory cause of action under the No-Fault Act against insurers, but that they are not remediless as providers can seek payment from the injured person for their reasonable charges." Defendants asserted that, because Covenant is controlling "and precludes a finding in favor of [p]laintiffs," reconsideration was appropriate under MCR 2.119(F).
*606 The trial court entered an opinion and order denying defendants' motion for reconsideration on August 7, 2017. The trial court concluded, in relevant part:
This Court acknowledges that, pursuant to Covenant , [d]efendants had a legal right to seek payment directly from Casanova under the provisions of the No-Fault Act. However, the issue presented before this Court was a separate consideration: whether health care providers could seek payment of "balance bills" from a patient-insured on a contractual liability theory, rather than under the No-Fault Act, after a provider's charges were audited for reasonableness and the provider was paid a partial payment based on the findings of those audits. This Court finds that although the May 23, 2017 Opinion & Order erred with *731 regard to the determination that providers must dispute partial payments with insurers, rather than patient-insured, it does not affect this Court's determination that a provider does not have a contractual right to pursue a patient-insured after a provider's charges have been determined to be unreasonable in accordance with the No-Fault Act, and therefore, a different disposition of the motion is not required.
* * *
This Court determined that the provisions of the No-Fault Act requiring a provider to charge only "reasonable and necessary charges," and the provisions of the Act requiring an insurer to pay "[a]llowable expenses consisting of all reasonable charges ..." imposed a standard of reasonableness that an insurer was duty-bound to enforce through audits. MCL 500.3107, MCL 500.3157. The Covenant decision did not change or affect either the standard of reasonableness or the insurer's duty to audit; indeed, the Covenant decision noted that a provider may seek payment only for a provider's reasonable charges. Since the present case raises the issue of a "balance bill," Covenant does not provide [d]efendants with an unfettered right to pursue the patient-insured, Casanova, because [d]efendants' charges were found to be unreasonable.
*607 This Court erred when it placed the dispute over whether [d]efendants' charges were reasonable between [d]efendants and Auto-Owners and Home-Owners, as Covenant removed a provider's cause of action against an insurer absent an assignment of no-fault benefits, but Covenant does not remove the necessity of resolving the dispute under the provisions of the No-Fault Act. [Citation omitted.]
The trial court further noted that defendants had admitted in their pleadings that the balance in question was unenforceable under the no-fault act's one-year-back rule. In light of the foregoing, the trial court concluded that "a different disposition of this case is not required." This appeal followed.
II. MEDICAL PROVIDER'S RIGHT TO SEEK PAYMENT OF BALANCE BILLS
Defendants first argue that the trial court erroneously refused to reverse its denial of summary disposition in plaintiffs' favor and that it instead erroneously concluded that despite Covenant , "medical providers have no contractual right to seek payment from their patients once their patients' insurers have paid the portion of the medical bills that the insurer deems reasonable ." We disagree.
"This Court reviews for an abuse of discretion a trial court's ruling on a motion for reconsideration." Sanders v. McLaren-Macomb , 323 Mich.App. 254, 264, 916 N.W.2d 305 (2018). An abuse of discretion occurs when the trial court's decision is "outside the range of reasonable and principled outcomes." Id . (quotation marks and citation omitted). " MCR 2.119(F)(3) requires the party moving for reconsideration to 'demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from the correction *608 of the error.' " Id . (citation omitted). "The trial court has 'considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties.' " Id . at 264-265, 916 N.W.2d 305 (citation omitted.) Additionally, we review de novo questions of law and the interpretation of statutes. Haksluoto v. Mt. Clemens Regional Med. Ctr. , 500 Mich. 304, 309-310, 901 N.W.2d 577 (2017). *732 Defendant correctly argues that in Covenant , our Supreme Court held that "healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance [PIP] benefits under the no-fault act" but that "a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges." Covenant , 500 Mich. at 196, 217, 895 N.W.2d 490. Accordingly, pursuant to MCR 2.119(F)(3), the trial court was well within its discretion to consider defendants' motion for reconsideration and did, in fact, correctly conclude that it had previously erred by concluding that defendants were required to pursue only Home-Owners. After Covenant , the trial court correctly concluded on reconsideration that defendants had a "legal right to seek payment directly from Casanova under the provisions of the No-Fault Act."
The trial court also correctly concluded that despite our Supreme Court's holding in Covenant , defendants were still not entitled to summary disposition in their favor. The original question before the trial court was whether defendants could "seek payment of 'balance bills' from a patient-insured on a contractual liability theory, rather than under the No-Fault Act, after a provider's charges were audited for reasonableness and the provider was paid a partial payment based on the *609 findings of those audits." We agree with the trial court and conclude that the answer to the question is no.
Under MCL 500.3157, a medical provider may only charge a "reasonable amount for the products, services and accommodations rendered" to an injured person for an accidental bodily injury covered by personal protection insurance. Likewise, under MCL 500.3107(1)(a), a no-fault insurer is only responsible for paying "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Therefore, the trial court did not abuse its discretion by concluding that the " Covenant decision did not change or affect either the standard of reasonableness or the insurer's duty to audit; indeed, the Covenant Court noted that a provider may seek payment only for a provider's reasonable charges."
Our Supreme Court's decision in Covenant also did not affect the validity of this Court's decision in Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n , 257 Mich.App. 365, 670 N.W.2d 569 (2003), aff'd 472 Mich. 91, 693 N.W.2d 358 (2005) ( AOPP ). This Court confirmed in AOPP that under the no-fault act, a medical provider will only be paid for reasonable and necessary charges actually incurred. AOPP , 257 Mich.App. at 374, 670 N.W.2d 569. The no-fault act
requires that an insurer only pay on behalf of the insured a "reasonable" charge for the particular product or service. However, the Legislature has not defined what is "reasonable" in this context, and, consequently, insurers must determine in each instance whether a charge is reasonable in light of the service or product provided. [ Id . at 379, 670 N.W.2d 569.]
Again, in Bronson Methodist Hosp. v. Auto-Owners Ins. Co. , 295 Mich.App. 431, 448, 814 N.W.2d 670 (2012), this *610 Court concluded that no-fault insurers are required to challenge the reasonableness of a medical provider's charges and that medical providers should expect no less. Further, the " 'customary' fee a particular provider charges under [ MCL 500.3157 ] does not define what constitutes a 'reasonable charge' under [ MCL 500.3107 ]. ... Rather, *733 the 'customary fee' is simply the cap on what health-care providers can charge, and is not, automatically, a 'reasonable' charge requiring full reimbursement under [ MCL 500.3107 ]." AOPP , 257 Mich.App. at 377, 670 N.W.2d 569.
However, medical providers are permitted to "challenge [the] failure to fully reimburse them for medical bills as a violation of" the no-fault act. Id . at 380, 670 N.W.2d 569. They must do so in the trial court, and the providers have the burden of establishing by a preponderance of the evidence that their charges were reasonable. Id . See also Bronson , 295 Mich.App. at 450, 814 N.W.2d 670, in which this Court reiterated that the no-fault act contemplates that
insurers will assess the reasonableness of a provider's charges, paying that portion deemed reasonable, with the provider having the prerogative to then challenge the insurer's decision not to pay the entire charge submitted by filing suit. Once an action is filed, the provider has the burden of proving by a preponderance of the evidence the reasonableness of its charges.
As the trial court concluded in its opinion and order on reconsideration, "[t]he only effect of Covenant was to place the dispute over the reasonableness of the charges between a provider and a patient-insured, rather than between a provider and an insurer." It did not alter the method of disputing the reasonableness of the amount paid.
In this case, it is clear that defendants never filed an action against Home-Owners or against Casanova, *611 challenging Home-Owners' determination of the reasonableness of its charges. Likewise, defendants never raised the reasonableness of its charges as an issue in its motion for summary disposition or any other responsive pleading, and never presented any evidence from which the trial court could have concluded by a preponderance of the evidence that the charge of $1,859 was reasonable and necessary for the services provided. Instead, defendants have chosen to harass Casanova over $782.86 outside the courts since 2014.
To conclude that defendants could prevail on the theory of an implied contract is contrary to the purpose of the no-fault act, and its implications would allow medical providers to circumvent the protective nature of the act. Therefore, we conclude that any claim defendants may have against Casanova would be for payment of services rendered to an injured person "covered by personal protection insurance" under the no-fault act. See MCL 500.3157. Accordingly, reversal of the trial court's original opinion and order granting summary disposition in favor of plaintiffs was unnecessary, and it was not an abuse of the trial court's discretion to refuse to do so.
III. ONE-YEAR-BACK RULE
Second, defendants argue that the trial court erroneously concluded that medical providers must file suit within one year from the date of providing medical services for automobile-related injuries because the one-year-back rule does not apply to benefits payable under Michigan contract law. Defendants further argue that after Covenant , a claim by a medical provider against its patient is not viewed as an action for recovery of PIP benefits under MCL 500.3145 ; rather, it is an "attendant contract claim." We disagree.
*612 Again, "[t]his Court reviews for an abuse of discretion a trial court's ruling on a motion for reconsideration." Sanders , 323 Mich. App. at 264.
*734 We disagree with defendants' interpretation of Covenant with respect to whether a claim against a medical provider is now viewed as an action for recovery of PIP benefits or a contract claim. Defendants would like this Court to conclude that after Covenant , a medical provider's claim against a patient-insured is an "attendant contract claim." However, the Covenant Court explicitly stated:
We conclude today only that a healthcare provider possesses no statutory right to sue a no-fault insurer. ... This Court need not consider whether [a medical provider] possesses a contractual right to sue ... because [the medical provider] did not allege any contractual basis for relief in its complaint. [ Covenant , 500 Mich. at 217 n. 39, 895 N.W.2d 490.]
Likewise, defendants never filed a complaint seeking payment from either Home-Owners or Casanova under a theory of implied contract or otherwise. The first time defendants advanced a theory of contractual liability was in a reply in opposition to Casanova's response to defendants' motion for summary disposition. Moreover, given our conclusion that any claim by defendants would still fall squarely within the parameters of the no-fault act, defendants' recovery would be subject to the one-year-back rule found in MCL 500.3145.
In this case, Home-Owners made a reasonable payment to Compass Health on behalf of Casanova on August 5, 2014. Therefore, in order to contest the reasonableness of the amount paid or to pursue the remaining $782.86, defendants would have had to file suit against Casanova on or before August 5, 2015. See MCL 500.3145, which provides that
*613 [a]n action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury ... unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If ... a payment has been made, the action may by commenced at any time within 1 year after the most recent allowable expense ... has been incurred.
Defendants concede that they did not file any action in the trial court. Accordingly, any claim defendants may have had against Casanova is now barred by the one-year-back rule. The trial court did not abuse its discretion by concluding the same.
Moreover, defendants conceded in their motion for summary disposition that "[p]laintiffs' debt to [d]efendants in the amount of $782.86 for the outstanding balance of the services rendered to ... Casanova on July 4, 2014 is unenforceable as a matter of law" because defendants chose not to pursue legal action. Further, defendants conceded that "[t]he debt is unenforceable ... pursuant to the one-year-back rule that governs the recovery of benefits under the" no-fault act. Therefore, defendants have waived this argument. See Bates Assoc., LLC v. 132 Assoc., LLC , 290 Mich.App. 52, 64, 799 N.W.2d 177 (2010), in which this Court articulated that a "party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute."
IV. RECOVERY UNDER THE MRCPA
Finally, defendants argue that the trial court erroneously granted Auto-Owners and Home-Owners relief under the MRCPA because only Casanova brought a claim. Defendants assert that Auto-Owners and Home-Owners *614 are therefore not entitled *735 to the attorney fees and costs awarded by the trial court under the MRCPA. We agree.
In their brief on appeal, Auto-Owners and Home-Owners concede that "the lower court awarded attorney fees only under the MRCPA and that only Mr. Casanova sought recovery under that Act in the Complaint. As a result, Auto-Owners and [Home-Owners] withdraw their request for fees." [Footnote omitted.] Further, Auto-Owners and Home-Owners correctly note in their brief on appeal that although the trial court awarded fees to Auto-Owners and Home-Owners under MCL 445.257(2) in its original opinion and order, it had not yet ruled on the fee request before this appeal. Therefore, Auto-Owners and Home-Owners argue, "any error on this point does not justify reversal."
Only Casanova sought relief under the MRCPA. Therefore, only Casanova is entitled to damages and reasonable attorney costs and fees under MCL 445.257(2). The trial court accordingly erred by awarding such fees to Auto-Owners and Home-Owners on that basis. We reverse the trial court's grant of reasonable attorney fees and costs to Auto-Owners and Home-Owners under MCL 445.257(2).
We affirm the trial court's order granting summary disposition in favor of plaintiffs and reverse the trial court's award of reasonable attorney fees and costs to Auto-Owners and Home-Owners under MCL 445.257(2).
Jansen and Gadola, JJ., concurred.

Compass Healthcare, PLC (Compass Health), and Lansing Neurosurgery (collectively, defendants).

Auto-Owners Insurance Company (Auto-Owners), Home-Owners Insurance Company (Home-Owners), and Caleb Casanova.

Lansing Neurosurgery is a division of Compass Health.

The phrase "balance billing" refers to a "healthcare provider's practice of requiring a patient or other responsible party to pay any charges remaining after insurance and other payments and allowances have been applied to the total amount due for the provider's services." Black's Law Dictionary (10th ed.).