*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CENTRIA HOME REHABILITATION, LLC,

Plaintiff-Appellant,

v

PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

Defendant-Appellee,

and

AUTO CLUB INSURANCE ASSOCIATION,

Defendant.

FOR PUBLICATION
March 2, 2023
9:20 a.m.

No. 359371
Oakland Circuit Court
LC No. 2020-180029-NF

---

CENTRIA HOME REHABILITATION, LLC,

Plaintiff-Appellant,

v

PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

Defendant-Appellee,

and

AUTO CLUB INSURANCE ASSOCIATION,

Defendant.

No. 359372
Oakland Circuit Court
LC No. 2020-180029-NF

---

Before: K. F. KELLY, P.J., and MURRAY and SWARTZLE, JJ.

-1-

PER CURIAM.

In these consolidated appeals, in Docket No. 359371, plaintiff Centria Home Rehabilitation, LLC, appeals by delayed application for leave to appeal[1] the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendant Philadelphia Indemnity Insurance Company.[2] In Docket No. 359372, plaintiff appeals by right the same trial court's order granting defendant's motion for case evaluation sanctions under MCR 2.403(O). This case presents the question of whether a health care provider, acting as assignee of an insured's right to personal injury protection (PIP) benefits or as a plaintiff in a direct action under MCL 500.3112, may sue an insurer to recover the difference between what the assignee billed and what the insurer paid when there is a dispute over the reasonableness of the charges. We conclude that it does: When a healthcare provider, acting under an assignment of rights from the insured or under a direct cause of action under MCL 500.3112, seeks to recover the balance due for PIP benefits from an insurer and there is a dispute over the reasonableness of the charges, the health care provider has standing to bring such a claim directly against the insurer. Thus, because the trial court erred when it granted defendant's motion for summary disposition, we reverse the trial court's order in Docket No. 359371, vacate the trial court's order in Docket No. 359372 granting case evaluation sanctions, and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On July 6, 2018, Nicholas Randall was injured while a passenger in a commercial vehicle operated by Homes of Opportunity, Inc. and insured by defendant. Randall suffered various injuries, including diffuse traumatic brain injury, lumbar spine fractures, and a fractured pelvis. On December 22, 2018, plaintiff began providing 24-hour in-home attendant care prescribed for Randall.

Plaintiff charged $33.20 an hour for its services. For the period from December 22, 2018, through January 12, 2019, plaintiff submitted a claim in the amount of $15,767.77. Defendant issued a check in the amount of $12,363.12 to plaintiff, accompanied by a letter explaining that payment was lower than billed on the basis of a "market survey conducted in April 2019." Plaintiff subsequently filed a single count complaint against defendant and Auto Club Insurance Association (ACIA), alleging that Randall was entitled to receive benefits under the no-fault act and that defendant and ACIA were obligated under the no-fault act to pay for Randall's medical expenses, including attendant care services. Plaintiff alleged that Randall had assigned to plaintiff all rights to payment for services performed by plaintiff and that plaintiff possessed all right to collect past or present benefits.

---

[1] *Centria Home Rehab LLC v Philadelphia Indemnity Ins Co*, unpublished order of the Court of Appeals, entered March 30, 2022 (Docket No. 359371).

[2] Because defendant Auto Club Insurance Association's claims were dismissed and is not a party to this appeal, we will refer to Philadelphia Indemnity Insurance Company as "defendant" in this opinion.

Defendant moved for summary disposition under MCR 2.116(C)(10), asserting that it had paid $446,335.68 for attendant care services for Randall through February 13, 2021, the balance claimed by plaintiff totaled $157,792.90, plaintiff's claim to that balance arose solely from an assignment from Randall's mother as Randall's caregiver and, without that assignment, plaintiff had no cause of action against defendant for the balance. Citing *McGill v Auto Ass'n of Mich*, 207 Mich App 402; 526 NW2d 12 (1995), and *LaMothe v Auto Club Ins Ass'n*, 214 Mich App 577; 543 NW2d 42 (1996), overruled in part on other grounds by *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017), defendant contended that Randall, as assignor, had no cause of action, direct or indirect, against defendant for the balance. Thus plaintiff, as assignee standing in the shoes of Randall, likewise had no cause of action against defendant, and dismissal of the complaint was required as a matter of law.

In its motion, defendant contended that under *McGill* and *LaMothe*, an insured cannot suffer damages from a dispute regarding a balance due for medical care or expenses because an insurer is obligated to defend and indemnify its insured in the event the insured is sued by a provider for an outstanding balance. Defendant contended that a provider that is dissatisfied with an insurer's payment has no cause of action against the insurer; rather, it must sue the insured. Thus, because an assignee acquires only the rights possessed by the assignor, Randall could not assign a claim against defendant. Defendant also contended that any claims for payment for services provided before March 2, 2019, were precluded by MCL500.3145(1), which limits recovery of benefits to one year before commencement of the action and that plaintiff's claims for payment for services provided after January 5, 2020, the date of the assignment, were precluded by MCL 500.3143, which provides that "an agreement for assignment of a right to benefits payable in the future is void."

In plaintiff's response to defendant's motion for summary disposition, plaintiff admitted that defendant had paid a portion of its charges, but denied that the hourly rate proposed by defendant was reasonable. Plaintiff also denied that its claims were based solely on the assignment of rights, and contended it had a statutory direct cause of action against defendant under MCL 500.3112, part of the July 2019 amendment of the no-fault act. Plaintiff disputed defendant's reliance on *McGill*, asserting that *McGill* was factually distinguishable from this case. Plaintiff also discounted defendant's reliance on *LaMothe*, asserting that both decisions had concluded that the insured had not "incurred" the provider's charge.

Addressing defendant's argument regarding the one-year-back rule, plaintiff stated that it was not seeking payment for services provided before March 2, 2019. Responding to defendant's contention that claims were precluded for services provided after the date of the assignment, plaintiff explained that it was not only requesting payment of PIP benefits under the assignment of rights, but also under MCL 500.3112, which took effect on June 11, 2019, and created an independent right for medical providers to claim PIP benefits from insurers.

After the parties submitted their briefs but before the court issued a decision, the parties attended facilitation. The facilitator, serving as a special case evaluation panel pursuant to the trial court's amended scheduling order, issued an award of $35,000 in favor of plaintiff. Defendant accepted the award but plaintiff rejected it.

Foregoing oral argument pursuant to MCR 2.119(E)(3), the trial court issued an opinion and order granting summary disposition in favor of defendant. The trial court agreed with defendant that, under *McGill* and *LaMothe*, Randall had no cause of action against defendant for the balance due and, therefore, could not assign any cause of action to plaintiff. The trial court also agreed that plaintiff's challenge to the reasonableness of the rate paid by defendant must be asserted in a suit against Randall, in which defendant would be obligated to defend and indemnify him. Thus, the trial court granted defendant's motion for summary disposition and dismissed plaintiff's complaint.

Plaintiff subsequently moved for reconsideration under MCR 2.119(F)(3), repeating its attempt to distinguish *McGill* on the ground that plaintiff had taken action to collect the balance due by initiating this action, unlike the plaintiffs in *McGill*, and contending that Randall would suffer injury to his credit rating if plaintiff is required to file suit against him for the balance due. Citing *Auto-Owners Ins Co v Compass Healthcare PLC*, 326 Mich App 595; 928 NW2d 726 (2018), plaintiff contended that the reasonableness of a provider's charges is an issue of fact requiring presentation of evidence at trial. The trial court denied the motion as untimely, also noting that the motion presented "the same issues as ruled on by the Court, either expressly or by implication, and rests on legal theories and facts which could have been pled or argued prior to the Court's decision."

Defendant subsequently filed a motion for case evaluation sanctions, asserting that it had accepted the facilitator's case evaluation award, but plaintiff had rejected it. Thus, because the trial court had granted defendant's motion for summary disposition and dismissed plaintiff's complaint, defendant was entitled to an award of its actual costs, including a reasonable attorney fee, for services necessitated by plaintiff's rejection of the award under MCR 2.403(O).

Plaintiff opposed defendant's motion, first asserting the complaint was erroneously dismissed because Michigan law had changed following the release of this Court's opinion in *Mich Institute of Pain & Headache, PC v State Farm Mut Automobile Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued June 24, 2021 (Docket No. 353033). Second, plaintiff asserted that the motion for sanctions should be denied in the interest of justice under MCR 2.403(O)(11), contending that Michigan law was "unsettled" at the time the trial court had granted summary disposition in favor of defendant, but had since been resolved in plaintiff's favor by this Court's decision in *Mich Institute of Pain*. Finally, plaintiff asserted that the award sought by defendant was excessive and requested an evidentiary hearing if the trial court was inclined to grant defendant's motion.

One day after entry of the trial court's order denying plaintiff's motion for reconsideration, plaintiff filed a second motion for relief from the trial court's order granting summary disposition, asserting that the recently-released decision of this Court in *Mich Institute of Pain* controlled this issue and that *McGill* and *LaMothe* did not apply to this case because, unlike those cases, in this case, as in *Mich Institute of Pain*, the insured had executed an assignment of rights to the provider. Plaintiff sought relief under MCR 2.604(A), contending that fewer than all claims had been adjudicated by the order granting summary disposition because defendant's motion for case evaluation sanctions had not been decided. Plaintiff also sought relief under MCR 2.612(C)(1), contending that the trial court had misapplied the law and "it would be in the interest of justice to correct that error without the time and expense of an appeal." The trial court denied the motion.

At the hearing on defendant's motion for case evaluation sanctions, defendant disputed plaintiff's contention that the caselaw was unsettled, asserting that *McGill* and *LaMothe* were binding precedent, but *Mich Institute of Pain* was an unpublished decision, was not binding on the trial court, and was decided after the trial court granted the motion for summary disposition. Defendant also asserted that no evidentiary hearing was necessary because defendant had provided sufficient evidence supporting its request for costs and attorney fees. However, the trial court explained that it was required to determine the reasonable attorney fee, which required further analysis. Plaintiff repeated its argument that *McGill* and *LaMothe* were distinguishable from this case, asserted that an award of sanctions was discretionary, and argued that an evidentiary hearing was necessary. The trial court expressed some agreement with plaintiff's position, noting changes in caselaw since *LaMothe* and stating that "realignment of this jurisprudence is inevitable." The court ultimately found that the reasonable rate for defendant's counsel ranged from $175 to $180 and, applying the factors outlined in *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), the court awarded case evaluation sanctions to defendant in the amount of $9,312.80.

These appeals followed.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition under MCR 2.116(C)(10) is reviewed de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). Summary disposition is proper "when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Id*.

A trial court's decision to grant or deny evaluation sanctions is generally reviewed de novo; however, a trial court's decision whether to apply the "interest of justice" exception is reviewed for an abuse of discretion. *Harbour v Correctional Med Servs, Inc*, 266 Mich App 452, 465; 702 NW2d 671 (2005). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 21; 837 NW2d 686 (2013).

## III. ANALYSIS

## A. TRIAL COURT'S RULING

On appeal, plaintiff argues this Court's decision in *Mich Institute of Pain*, in which this Court concluded that the unpaid balances were not "balance bills" and concluded that the plaintiff had the legal right to pursue the unpaid balance due, controls the outcome of this case. Plaintiff contends that it pursued payment by filing the complaint in this case and, unlike *McGill*, the parties dispute whether plaintiff's charges were reasonable, which is a question for the jury. Plaintiff argues that if defendant's position were adopted, then any arbitrary payment by the insurer would require the provider to sue the insured injured person directly, which contravenes the purpose of the no-fault act.

In response, defendant contends that plaintiff lacked standing as Randall's assignee to pursue balance bills from defendant. Defendant suggests that *Mich Institute of Pain* is not persuasive because it was released after the trial court granted summary disposition in favor of defendant, is an unpublished decision and is not binding precedent, and does not provide a convincing basis to reverse the trial court's ruling in this case. According to defendant, under Michigan law, insured individuals have no cause of action against their insurers until the insured suffers an injury as a result of an underpayment. Thus, defendant contends that Randall had no cause of action and he could not assign a right he did not possess.

Under MCL 500.3107(1)(a), PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." A healthcare provider that renders treatment for an accidental bodily injury covered by personal protection insurance may charge a reasonable amount for such treatment. MCL 500.3157(1). Effective June 11, 2019, under MCL 500.3112, a healthcare provider "may make a claim and assert a direct cause of action against an insurer . . . to recover overdue benefits payable for charges for products, services, or accommodations provided to an injured person." However, this applies only "to products, services, or accommodations provided after the effective date of this amendatory act." 2019 PA 21, enacting § 1.

In this case, the trial court granted defendant's motion largely in reliance on *McGill* and *LaMothe*, concluding that "[u]nder Michigan law, a patient cannot sue his no-fault insurer to recover the unpaid balance on charges by medical providers that the insurer has determined to be excessive or unreasonable." The trial court explained that, under both *McGill* and *LaMothe*, defendant was obligated to defend and indemnify Randall in the event that plaintiff sued him to collect the balance due. Thus, the trial court concluded, because plaintiff never sued Randall, Randall had no cause of action against defendant to recover the balance due. Without a cause of action, Randall could not assign any cause of action to plaintiff. The trial court also concluded that plaintiff had no direct cause of action against defendant to recover the balance due because any dispute regarding the reasonableness of a healthcare provider's charges must be resolved between the provider and the insured, rather than the provider and the insurer.

In *McGill*, the six plaintiffs incurred hospital and medical treatment expenses as a result of separate automobile accidents. *McGill*, 207 Mich App at 404. The defendants, their insurers, declined to pay the amounts billed by various healthcare providers, deeming the amounts billed unreasonable. *Id*. The plaintiffs sued their insurers as a class, claiming to be at risk of being sued by their healthcare providers and seeking declaratory and injunctive relief, as well as an order compelling the insurers to pay the amounts billed by the healthcare providers. *Id*. Notably, however, the health care providers themselves never pursued a claim against any party that the charges were unreasonable. *Id*. The insurers assured the court, in their pleadings and in open court, that they would defend and indemnify the plaintiffs in the event the plaintiffs were sued by their healthcare providers and would also attempt to protect the plaintiffs' credit ratings if the healthcare providers pursued collection activities. *Id*. Thus, the trial court granted summary disposition in favor of the insurers, concluding that the plaintiffs had not suffered pecuniary injury. *Id*. at 404-405.

-6-

On appeal, this Court affirmed. Observing that the no-fault act limits an insurer's liability to charges that are reasonable and prohibits a healthcare provider from charging more than a reasonable fee, this Court explained that, "in theory, the insureds could be sued for the difference between what the carrier will pay and what the provider demands, but it is unlikely that the insureds would be liable for those expenses." *Id*. at 406. In addition, noting that the insurers had expressly stated that they would defend and indemnify the plaintiffs if sued by their healthcare providers, and that the record revealed no evidence that the plaintiffs had suffered any real or threatened injury, this Court explained that the trial court lacked subject-matter jurisdiction to enter a declaratory judgment because the alleged injuries were merely hypothetical and concluded the trial court properly granted summary disposition in favor of the insurers. *Id*. at 407.

In *LaMothe*, issued one year after *McGill*, this Court found *McGill* "dispositive." *LaMothe*, 214 Mich App at 581. In that case, the plaintiff's insurer conducted an audit, determined that a portion of the healthcare provider's charges were unreasonable, and refused to pay that portion of the charges. The plaintiff filed suit against the insurer, alleging, in part, breach of the insurance contract. *Id*. at 579. The trial court granted summary disposition in favor of the insurer under MCR 2.116(C)(10), concluding the plaintiff did not submit sufficient proof of damages to create a genuine issue of material fact, and under MCR 2.116(C)(8), concluding the plaintiff did not state a claim for breach of contract. *Id*. at 579-580.

This Court affirmed, concluding first that the defendant had not refused to pay healthcare benefits to the plaintiff, but instead "had paid and continues to pay those charges reasonably incurred for reasonably necessary products, services, and accommodations for plaintiff's care." *Id*. at 581. The Court also determined that the plaintiff had suffered no damages because "the insurer has agreed to fully defend and indemnify the insured from liability services priced in excess of what the insurer considers to be reasonable and customary." *Id*. at 583. The Court observed that a healthcare provider was unlikely to sue an insured for an amount in excess of a reasonable fee because "such a suit, freighted with the burden of seeking the unreasonable, would in all probability be unsuccessful." *Id*. at 585.

For its part, plaintiff contends that resolution of this case is not controlled by *McGill* or *LaMothe*, but is instead controlled by this Court's unpublished decision in *Mich Institute of Pain*. In that case, the plaintiff provided medical services to the insured, who executed an assignment of rights each time the plaintiff provided a service. *Mich Institute of Pain*, unpub op at 1. The plaintiff submitted its bills to the defendant-insurer, which submitted only partial payments on the basis of its assessment of the reasonableness of the plaintiff's charges. *Id*. The plaintiff then filed suit, as assignee of the insured, seeking the difference between its charges and the amount paid by the defendant. *Id*. at 2. The defendant moved for partial summary disposition, contending that the insured could not have sued his insurer because he had not suffered any loss or damages as he had not been sued for payment of the balance; therefore, the plaintiff, as the insured's assignee, likewise had no cause of action. *Id*. The trial court agreed, dismissing the plaintiff's claim for the unpaid balance. *Id*.

This Court reversed, explaining that in *Covenant*, the Michigan Supreme Court held that the claim for payment of PIP benefits belongs to the insured, not to the healthcare provider, but also noted that its decision did not impair the ability of the insured to assign the right to past or presently due benefits to the provider. *Mich Institute of Pain*, unpub op at 2-3. This Court rejected

-7-

the defendant's claim that the insured had not incurred any expenses because he had not been sued by the provider, explaining that the insured had incurred the charges for healthcare services at the time the services were rendered. *Id*. at 3. Thus, the Court concluded that under the no-fault act, the insured was entitled to have his reasonable medical expenses paid by his insurer and assigned that right to his healthcare provider. *Id*. In reaching this conclusion, this Court distinguished both *McGill* and *LaMothe*, noting that neither case involved an assignment of rights; instead, in both cases, the insureds themselves had sued their insurers. *Mich Institute of Pain*, unpub op at 3. In addition, in neither case had the healthcare providers challenged the partial payments; therefore, "the insureds in both cases had no legal reason to contest the partial payments." *Id*.

Because *Mich Institute of Pain* is an unpublished decision, it is not binding on this Court, MCR 7.215(C), and plaintiff's contention that this unpublished decision "controls" the resolution of this issue is not well founded. Although unpublished decisions of this Court are not binding, MCR 7.215(J)(1), the reasoning in an unpublished decision may be adopted as persuasive. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 232 n 4; 964 NW2d 809 (2020). Here, we find the reasoning of *Mich Institute of Pain* to be persuasive and we adopt it. Crucially, unlike in both *McGill* and *LaMothe*, plaintiff objected to defendant's partial payments and the trial court made no finding regarding the reasonableness of defendant's payments. In addition, unlike in both *McGill* and *LaMothe*, the insured assigned his rights to payment of the PIP benefits to plaintiff, his healthcare provider. This case is also distinguishable on the ground that in both *McGill* and *LaMothe*, this Court found significant the fact that the insurers had expressly agreed to defend and indemnify the insured in the event of a suit by the healthcare provider. See *McGill*, 207 Mich App at 406-407; *LaMothe*, 214 Mich App at 580-581. However, in this case, defendant has provided no evidence of any agreement to defend and indemnify Randall, although this Court is skeptical of such an arrangement even if such promises were made.

As the Court reasoned in *Mich Institute of Pain*, an insured incurs charges for health care services at the time the services are rendered. See *Covenant*, 500 Mich at 207 ("[C]harges for healthcare are incurred by others, most commonly patients, and those patients are the ones who become liable for payment of those charges"); *Community Resource Consultants, Inc v Progressive Mich Ins Co*, 480 Mich 1097, 1098; 745 NW2d 123 (2008) ("Generally, one becomes liable for the payment of services once those services have been rendered."). Once those charges are incurred, the insured becomes liable to pay them. Thus, when the insured assigns their rights under the no-fault act to the health care provider, the insured assigns the right to "have the reasonable medical expenses [the insured] incurred for healthcare services provided by [the provider] paid by [the insurer]." *Mich Institute of Pain*, unpub op at 3, citing *Covenant*, 500 Mich at 217 n 40. Similarly, when a health care provider has a direct cause of action under MCL 500.3112, it may sue directly to "recover overdue benefits payable for charges for products, services, or accommodations provided to an injured person."

The fact that there is a genuine dispute, at this stage of the litigation, regarding whether the payments made by defendant were reasonable, is the key distinguishing factor in this case from those cited by defendant. In *Auto-Owners Ins Co v Compass Healthcare PLC*, 326 Mich App 595, 608-609; 928 NW2d 726 (2018), we held that a health care provider may not seek reimbursement against the insured under a contractual liability theory. To do so would be "contrary to the purpose of the no-fault act, and its implications would allow medical providers to circumvent the protective nature of the act." *Id*. at 611. Thus, under *Compass Healthcare*, the

only circumstance in which a health care provider *could* pursue an insured would be under the no-fault act, which itself would require a dispute over whether the charges were reasonable.

In such a dispute, even assuming the insurer indemnifies and defends the insured, what is the insured's position supposed to be? Does the insured have any interest in the outcome, since the insurer will purportedly indemnify them? What would prevent the insured from simply admitting to the allegations in the complaint to short circuit the process and end the litigation to save everyone the time and expense? See *Flowers v Wilson*, unpublished per curiam opinion of the Court of Appeals, issued September 22, 2022 (Docket No. 354436 (Swartzle, J., *concurring*), at 3 ("If the insured patient believes that the unpaid bill was for a necessary service reasonably priced, and that patient admits this in her answer to a provider's lawsuit against her, will the insurer then accept the admission and cover the bill in full?"). Or would the insured be forced to adopt the insurer's position in exchange for indemnification? What happens if the insurer refuses to offer indemnification?

It is evident that the implications of a ruling in defendant's favor are fraught with peril and uncertainty. Moreover, the formalism insisted on by defendant would be contrary to the purpose of the no-fault act, which is to "provid[e] assured, adequate, and prompt recovery for economic loss arising from motor vehicle accidents." *Adanalic v Harco Nat'l Ins Co*, 309 Mich App 173, 197; 870 NW2d 731 (2015). By recognizing a health care provider's ability to bring a claim against an insurer for the difference between what was billed and what was paid, claims concerning these amounts will be most efficiently litigated by the parties with the pecuniary interest at stake. On the other hand, by insisting that a health care provider sue its patient and have the insurer defend and indemnify, the interests in the litigation become misaligned and the costs and expenses to all parties only increase.

Not deterred, defendant advances three alternative grounds to affirm the trial court's order.[3] First, defendant contends that plaintiff's claim for PIP benefits is barred because plaintiff submitted fraudulent billing statements. This argument lacks merit. The no-fault act does not include fraud as a defense to PIP coverage, *Meemic Ins Co v Fortson*, 506 Mich 287, 303-304; 954 NW2d 115 (2020), although an insurer may deny a particular claim if it concludes the claim is fraudulent. *Shelton v Auto Owners Ins Co*, 318 Mich App 648, 655; 899 NW2d 744 (2017). However, we have consistently held that the element of intent required to show fraud is almost always a question for the jury and not appropriate for summary disposition. *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 658-660; 899 NW2d 744 (2017). It is not self-evident that the purported discrepancies in the statements provided by plaintiff, which form the basis of defendant's fraud allegation, are the product of fraudulent intent.

As the second alternative ground for affirming the trial court, defendant asserts that the one-year-back rule, MCL 500.3145(2), requires dismissal of all claims for services rendered before March 2, 2019. This issue was raised in defendant's motion for summary disposition and, in its response, plaintiff asserted that it was only seeking the balance due for services rendered after

---

[3] An appellee may generally urge alternative grounds to affirm a trial court's decision without filing a cross-appeal, even if the alternative grounds were considered and rejected in the trial court. *Boardman v Dep't of State Police*, 243 Mich App 351, 358; 622 NW2d 97 (2000).

March 17, 2019. Thus, this issue is moot, as plaintiff is not seeking damages for services rendered before March 2, 2019.

Finally, defendant asserts that plaintiff's claims for services provided after January 5, 2020—the date that Randall executed the assignment of rights to plaintiff—should be dismissed pursuant to MCL 500.3143, which provides that an assignment of rights to benefits payable in the future is void. However, the 2019 amendment to MCL 500.3112 provides that, after June 11, 2019, a healthcare provider "may make a claim and assert a direct cause of action against an insurer . . . to recover overdue benefits payable for charges for products, services, or accommodations provided to an injured person." MCL 500.3112. This amendment applies "to products, services, or accommodations provided after the effective date of this amendatory act." 2019 PA 21, enacting § 1. Thus, plaintiff had no need for an assignment to claim payment for services rendered after June 11, 2019.

Because plaintiff was entitled to assert a cause of action against defendant for the balance due, the trial court erred when it granted defendant's motion for summary disposition. When a health care provider, acting under an assignment of rights from an insured or under a direct cause of action under MCL 500.3112, seeks to recover the balance due for PIP benefits from an insurer and there is a dispute over the reasonableness of the charges, the health care provider has standing to bring such a claim directly against the insurer. Accordingly, we reverse the trial court's order granting defendant's motion for summary disposition.

## B. CASE EVALUATION SANCTIONS

Plaintiff contends that because the trial court erred when it granted defendant's motion for summary disposition, its subsequent order granting case evaluation sanctions was also erroneous. We agree.

At the time the trial court decided defendant's motion for case evaluation sanctions, MCR 2.403 stated that if a party rejects a case evaluation award that was accepted by an opposing party, the rejecting party "must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation." MCR 2.403(O)(1), as amended May 1, 2019.[4] The definition of "verdict" included a "judgment entered as a result of a ruling on a motion after rejection of the case evaluation." MCR 2.403(O)(2)(c), as amended May 1, 2019. Thus, because there is no longer a "verdict" in this case as a result of this Court's opinion, the order awarding case evaluation is vacated. See *Chouman v Home Owners Ins Co*, 293 Mich App 434, 444-445; 810 NW2d 88 (2011).

---

[4] Effective January 1, 2022, MCR 2.403 was amended and Subrule (O), the provision authorizing case evaluation sanctions, was deleted. MCR 2.403, as amended January 1, 2022, 508 Mich clxiii. However, when reviewing the trial court's decision to award case evaluation sanctions, this Court applies the court rule in effect at the time of the trial court's decision on defendant's motion. See *In re Guardianship of Brosamer*, 328 Mich App 267, 272 n 1; 936 NW2d 870 (2019).

-10-

We reverse the trial court's order granting defendant's motion for summary disposition and vacate the court's order granting defendant's motion for case evaluation sanctions, and remand the case to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs. MCR 7.219(A).


/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray
/s/ Brock A. Swartzle