*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BETH MAURER, also known as BETH MAUER,

      Plaintiff-Appellee,

v

FARM BUREAU GENERAL INSURANCE
COMPANY,

      Defendant-Appellant.

UNPUBLISHED
February 9, 2023

No. 359690
Washtenaw Circuit Court
LC No. 18-000638-NF

Before: PATEL, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

Beth Maurer was injured in a motor vehicle accident in 2000. As a result of the injuries she sustained in the accident, she underwent surgery in 2002. Farm Bureau General Insurance Company insured Mauer at the time of the accident, and it paid for the surgery. Maurer maintains that she improved for a time after the surgery, but then her symptoms worsened. She relied on pain medication for years. Ultimately, she underwent another surgery in 2018.

Farm Bureau refused to pay the expenses that Maurer incurred for continued pain management, the 2018 surgery, and post-surgical attendant care. Farm Bureau asserted that Maurer had not presented reasonable proof that the expenses were related to the 2000 accident. Maurer commenced this action for first-party personal protection benefits (PIP). The jury returned a verdict in favor of Maurer. Thereafter, the trial court determined that Farm Bureau unreasonably withheld PIP benefits, and it ordered Farm Bureau to pay $54,820 in attorney fees to Maurer. On appeal, Farm Bureau argues that the trial court erred by awarding attorney fees to Maurer and denying Farm Bureau's motion for reconsideration. Finding no error warranting reversal, we affirm.

## I. BACKGROUND

In July 2000, Maurer struck a deer while driving. She suffered a back injury as a result of the accident. Farm Bureau paid for Maurer's medical treatment, which included a 2002 surgery to remove a herniated disc at the T7-T8 area of her back and subsequent pain management. Farm

-1-

Bureau's own medical examiner opined that the Maurer's 2002 surgery, chronic pain, and pain management treatment were related to the accident.

In July 2013, Maurer's pain management specialist referred her to Dr. Fredrick Junn, a neurosurgeon. Dr. Junn identified an area of concern just below the surgery that occurred in 2002. He diagnosed Maurer with bone spurs that were pressing against her spinal canal. But Dr. Junn did not recommend surgery at that time because Maurer's symptoms did not warrant the risks of the surgery. Maurer continued to treat with her pain management specialist to manage her chronic pain.

In 2015, Farm Bureau sent Maurer for examinations by two of its own physicians: Dr. Theresa Oney-Marlow, a physical medicine and rehabilitative physician, and Dr. Gene Mitchell, a pain management specialist. After receiving their opinions and recommendations, Farm Bureau insisted that Maurer enter into a detoxification program and cease using opioids for pain management. Farm Bureau refused to make further payments for Maurer's medical care.[1]

In 2018, Dr. Junn recommended that Maurer undergo surgery because her symptoms had worsened and she was at risk for paralysis. He performed the surgery in February 2018. Maurer filed this lawsuit for unpaid PIP benefits in June 2018. During the litigation, Farm Bureau compelled Maurer to undergo another medical examination by one of its own doctors. The examination was performed by Dr. Steven Kalkanis, a neurosurgeon. Dr. Kalkanis opined that it was nearly impossible to determine whether the 2018 surgery was related to the 2000 accident.

Following a two-day jury trial, the jury returned a verdict in favor of Maurer. After a hearing, the trial court found that Farm Bureau unreasonably refused to pay for Maurer's medical treatment. Accordingly, the trial court entered a judgment in favor of Maurer for $44,165.94 in medical expenses that had been paid by Medicare, $11,237.32 in other allowable expenses, $4,432.26 in interest awarded by the jury, and $54,820 in attorney fees. Farm Bureau now appeals of right in this Court.

## II. ATTORNEY FEES

Farm Bureau first argues that the trial court erred when it awarded Maurer her attorney fees under MCL 500.3148. We disagree.

## A. STANDARD OF REVIEW

We review de novo whether the trial court properly interpreted and applied the no-fault act. See *Sylvan Twp v City of Chelsea*, 313 Mich App 305, 316; 882 NW2d 545 (2015). Whether the trial court properly awarded attorney fees under MCL 500.3148 involves a mixed question of fact

---

[1] Insurance companies are not qualified to dictate an insured's course of medical treatment. The right to prescribe an insured's medical treatment belongs exclusively to an insured's treating medical providers. An insurance company has no authority to order an insured to enter into a detoxification program or to condition payment of an insured's no-fault benefits on successful detoxification.

and law. See *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). "What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact." *Id.* We review questions of law de novo and the trial court's factual findings for clear error. *Id.* A finding is clearly erroneous when we are left with the definite and firm conviction that a mistake has been made. *Id.*

B. ANALYSIS

Pursuant to MCL 500.3148(1), an attorney who represents a "claimant in an action for personal or property protection insurance benefits that are overdue" is entitled to a reasonable fee. If the trial court "finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment," the "attorney's fee is a charge against the insurer in addition to the benefits recovered." MCL 500.3148(1). There are two prerequisites to an award of attorney fees: the benefits must be overdue and the insurer must have unreasonably refused to pay or unreasonably delayed payment of the benefits. See *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2009).

The purpose of this fee-shifting provision is to ensure prompt payment to the insured. *Ross*, 481 Mich at 11. Accordingly, an insurer's refusal or delay in paying PIP benefits gives rise to a rebuttable presumption that the decision was unreasonable, and the insurer bears the burden to justify the refusal or delay. *Id.*; see also *McKelvie v Auto Club Ins Ass'n*, 203 Mich App 331, 335; 512 NW2d 74 (1994). "The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Ross*, 481 Mich at 11. If the insurer fails to present evidence that would allow the trial court to find that the refusal or delay was reasonable, the trial court is warranted in awarding attorney fees. See *Nahshal v Fremont Ins Co*, 324 Mich App 696, 721; 922 NW2d 662 (2018). The relevant inquiry "is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Ross*, 481 Mich at 11.

On appeal, Farm Bureau asserts that it had no obligation to reconcile the conflict between its experts and Maurer's treating physicians. It further suggests that, once its experts opined that Maurer did not need pain management or surgery, its decision to follow their recommendations was necessarily reasonable. Farm Bureau relies, in part, on our Supreme Court's decision in *Moore*.

In *Moore*, our Supreme Court considered whether the law imposed an extra duty on insurers when there is a conflict in expert opinions. The Court rejected a rule crafted by this Court that imposed such a duty. See *Moore*, 482 Mich at 520-522. The Court stated that such a rule was not supported by the plain language of MCL 500.3148(1). The Court explained that, after a claimant presents evidence to support his or her claim, the insurer only has a duty to "evaluate that evidence as well as evidence supplied by the insurer's doctor before making a reasonable decision regarding whether to provide the benefits sought." *Id.* at 523. But the mere fact that an insurer's decision is supported by an expert's opinion does not lead to the invariable conclusion that the insurer's decision is reasonable. The inquiry remains whether the decision was reasonable under the *totality of the circumstances*. See *id.* at 522-523; see also *Thomson v Detroit Auto Inter-Ins Exchange*, 133 Mich App 375, 385; 350 NW2d 261 (1984) (stating that the "test is whether the adjuster's reliance on the opinion of that doctor is reasonable under the circumstances"). "[A]n

insurer acts at its own risk in terminating benefits in the face of conflicting medical reports." *Moore*, 482 Mich at 522.

In this case, Farm Bureau presented evidence that, in 2015, it began to question whether Maurer continued to need medical treatment for the injuries that she sustained in the 2000 accident. Farm Bureau presented medical records that suggested Maurer had become too reliant on pain medication, had not been complying with her treatment plans, and might not need pain medication. Farm Bureau sent Maurer to its own physicians for medical examinations, and it cited those physicians' reports as evidence that there was a factual dispute over whether Maurer continued to require care for the injuries that she sustained in 2000.

At Farm Bureau's request, Dr. Oney-Marlow evaluated Maurer, reviewed Maurer's medical records, and reviewed the imaging studies that Maurer underwent over the years. Dr. Oney-Marlow identified imaging studies that revealed degenerative changes in Maurer's thoracic region. Dr. Oney-Marlow also recognized that subsequent images showed protrusions into Maurer's spinal canal. She further acknowledged that Maurer had been seeing Dr. Junn and that he had diagnosed Maurer with a serious back condition. Despite these observations, Dr. Oney-Marlow opined that there was no "objective evidence" to relate Maurer's pain complaints to the accident that occurred in 2000. In reaching this conclusion, Dr. Oney-Marlow did not discuss the implications of the protrusion into the spinal canal; did not discuss the fact that the protrusion was developing in the T8-T9 region, which was just below the area where Maurer had her earlier surgery; and did not discuss the evidence that Maurer had neurological symptoms in her left leg. Dr. Oney-Marlow simply asserted—without any analysis of the evidence—that the changes were mild and age-related. On the basis of that conclusory assertion, she recommended that Farm Bureau cease paying for any treatments on behalf of Maurer.

Dr. Mitchell also examined Maurer for Farm Bureau and reviewed her medical records. He opined that Maurer did not need pain management. In reaching his conclusion, Dr. Mitchell did not discuss any of the imaging studies or medical records. He simply asserted that there was nothing wrong with Maurer. Dr. Mitchell even questioned whether she needed the initial surgery in 2002 despite the consensus that that surgery was appropriate and caused by the accident in 2000.

The failure by Dr. Oney-Marlow and Dr. Mitchell to offer anything more than conclusory statements and recommendations distinguishes this case from the cases that Farm Bureau cites for the proposition that its decision was reasonable. See *Roberts v Farmers Ins Exch*, 275 Mich App 58, 70; 737 NW2d 332 (2007) (noting that the physician connected his recommendations to the clinical evidence and determined that the evidence was inconsistent with the insured having suffered a brain injury); *Beach v State Farm Mut Auto Ins Co*, 216 Mich App 612, 630; 550 NW2d 580 (1996) (stating that the evidence showed that the insured had already suffered an earlier closed-head injury and had cognitive impairments, which established factual uncertainties about causation); *McCarthy v Auto Club Ins Ass'n*, 208 Mich App 97, 104; 527 NW2d 524 (1994) (holding that the trial court clearly erred because the insurer properly relied on the insured's own treating physician's conclusion that plastic surgery would not improve the insured's appearance).

The trial court was in the best position to determine whether Farm Bureau reasonably relied on Dr. Oney-Marlow's and Dr. Mitchell's reports. Notably, Farm Bureau acknowledged that Dr. Junn determined that Maurer needed surgery, which was contrary to the recommendations of Dr.

Oney-Marlow and Dr. Mitchell. A reasonable fact finder could conclude that an insurer would not rely on Dr. Oney-Marlow's and Dr. Mitchell's reports to justify refusing all payments associated with Maurer's care because the assessments were conclusory, ignored significant medical evidence to the contrary, and were contrary to the opinions of Maurer's treating physicians. See *McKelvie*, 203 Mich App at 337 (stating that it is for the trial court sitting as the trier of fact to decide issues of credibility when evaluating the reasonableness of a decision to refuse payment). Moreover, even if Farm Bureau could reasonably refuse payment for medications on the ground that Maurer had become dependent on opioids, that by itself did not establish that it was reasonable to refuse to pay for Maurer's continued treatment and monitoring for back problems, or to refuse to pay for her 2018 surgery. See *id*. at 336 (holding that the fact that an insurer has a bona fide reason for disputing one payment does not justify refusing to make *any* payments).

Farm Bureau also relied on the 2019 deposition testimony of Dr. Washabaugh, Maurer's treating pain management specialist, as support for its decision to suspend payment for Maurer's medical treatment. It is difficult to see how Farm Bureau could have relied on Dr. Washabaugh's deposition testimony to make a reasonable decision to refuse to pay for Maurer's care because he did not testify until 2019, which was *after* litigation was commenced due to its refusal to pay PIP benefits. See *Slocum*, 328 Mich App at 643 (stating that the trial court must determine whether the decision was reasonable at the time that it was made). Nevertheless, Dr. Washabaugh's testimony did not support Farm Bureau's determination that Maurer did not require any medical treatment or services arising from her 2000 accident. Although Dr. Washabaugh could not state that Maurer's current condition was causally related to the accident, he testified that Maurer had medically verifiable degenerative changes to her back that warranted intervention. This testimony was in stark contrast to Dr. Mitchell, who opined that Maurer did not have *any* problems and did not need surgery. Dr. Washabaugh characterized the problems with Maurer's thoracic region as rare and not normally seen with ordinary aging. Accordingly, Dr. Washabaugh's testimony undermined the claims by Dr. Oney-Marlow and Dr. Mitchell that Maurer did not have any medical condition that required treatment and supported an inference that the changes to Maurer's back were not the result of normal aging.

Farm Bureau further suggested that its decision was reasonable because it suspended all payments for medical care or other services on the condition that Maurer undergo detoxification. Farm Bureau argued that it did not have to resume payments because the evidence showed that Maurer did not successfully complete detoxification, and she returned to heavy opioid use after a brief outpatient detoxification regimen. But Farm Bureau does not explain how Maurer's unsuccessful detoxification effort made it reasonable for Farm Bureau to refuse to pay for all of Maurer's medical expenses. Even if her failure to participate in an in-patient detoxification program might have supplied a bona fide reason to dispute the continued payment for pain management, it did not constitute a bona fide reason to dispute payment for treatment to monitor and correct the continuing degeneration of Maurer's back. See *McKelvie*, 203 Mich App at 336. Given the evidence that Maurer could have suffered paralysis if her back condition were left untreated, a reasonable finder of fact could conclude that it was unreasonable for Farm Bureau to insist that Maurer complete a detoxification program before seeking treatment for her back condition and before undergoing surgery.

Additionally, Farm Bureau argued that its decision to refuse to pay for the 2018 surgery was supported by Dr. Kalkanis's "independent medical examination" because Dr. Kalkanis opined

-5-

that the surgery was unrelated to the accident. But Dr. Kalkanis did not examine Maurer until 2019, which was *after* Farm Bureau had already made the decision to stop paying for Maurer's care. So Farm Bureau could not have relied on his opinion at the time of its decision. See *Slocum*, 328 Mich App at 643.

Nevertheless, Dr. Kalkanis recognized that Maurer had degenerative changes to her back that warranted intervention, which contradicts Dr. Mitchell's and Dr. Oney-Marlow's opinions. While Dr. Kalkanis inferred that Maurer's 2018 surgery was not causally related to the accident in 2000, he did not unequivocally assert that the 2018 surgery was unrelated to the accident. In fact, he candidly admitted that surgery on one area of the back commonly makes an adjacent level susceptible to disease. Dr. Kalkanis merely opined that it was simply not possible to identify a particular cause for Maurer's back condition. He also testified that Dr. Junn was a great surgeon who performed a surgery that was "totally indicated" from the medical evidence. The fact that Dr. Kalkanis opined that Maurer's 2000 accident could not be definitively associated with the need for surgery in 2018 did not establish a legitimate factual dispute after Farm Bureau had already ceased paying Maurer's PIP benefits. Consequently, the trial court did not clearly err when it gave his testimony little weight in assessing whether Farm Bureau acted reasonably at the time when it cut Maurer off from all payments for her care. See *McKelvie*, 203 Mich App at 337.

Given the conclusory nature of Dr. Oney-Marlow's and Dr. Mitchell's reports, the imaging evidence contradicting them, the opposing opinions of Maurer's treating physician, and the after-the-fact opinion and testimony Dr. Kalkanis, we are not left with the definite and firm conviction that the trial court erred when it found that Farm Bureau's decision was unreasonable under the totality of the circumstances. See *Ross*, 481 Mich at 7.

## III. RECONSIDERATION

Farm Bureau argues that the trial court erred when it denied its motion for reconsideration. We disagree.

## A. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for reconsideration for an abuse of discretion. See *Auto-Owners Ins Co v Compass Healthcare, PLC*, 326 Mich App 595, 607; 928 NW2d 726 (2018). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*.

## B. ANALYSIS

It was Farm Bureau's burden to establish that the trial court made a palpable error and that a different disposition would result from correction of the error. See *Luckow Estate v Luckow*, 291 Mich App 417, 426; 805 NW2d 453 (2011), citing MCR 2.119(F)(3). Farm Bureau argued that trial court had improperly interpreted the evidence—namely, the court had, in its view, misunderstood the import of the testimony by Dr. Kalkanis and Dr. Oney-Marlow. It also argued that the trial court misapplied the law because it determined that Farm Bureau's experts had to rule out causation before it could reasonably deny coverage. Farm Bureau asserted that the opinions by Dr. Kalkanis and Dr. Oney-Marlow were "definitive" and established that Farm Bureau acted reasonably.

Although a trial court has broad authority to correct errors on a motion for reconsideration, a party does not establish grounds for reconsideration by merely presenting the same issues on reconsideration that were decided in the original matter. Farm Bureau's mere disagreement with the trial court's assessment of the evidence does not establish a ground for reconsideration. See MCR 2.119(F)(3) ("Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted."). Because Farm Bureau presented the same issues in its motion for reconsideration, the trial court did not abuse its discretion when it denied the motion. *Auto-Owners Ins Co*, 326 Mich App at 607. Moreover, as discussed above, the trial court did not err by awarding attorney fees to Maurer.

## IV. CONCLUSION

Farm Bureau has not identified any errors that warrant relief. Accordingly, we affirm.

/s/ Sima G. Patel
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro